IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHAD KILMER, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>CORE VALUE INSURANCE GROUP LLC, a Delaware registered company,<br><br>*Defendant.* | Case No. 3:26-cv-613 (AJB/MJK)<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

## CLASS ACTION COMPLAINT

Plaintiff Chad Kilmer ("Plaintiff Kilmer" or "Kilmer") brings this Class Action Complaint and Demand for Jury Trial against Defendant Core Value Insurance Group LLC ("Defendant CVIG" or "CVIG") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by placing pre-recorded calls to consumers without consent. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Kilmer, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Kilmer is a resident of Binghamton, New York.

2. Defendant CVIG is a company incorporated in Delaware with its headquarters located in Trevose, Pennsylvania.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over Defendant CVIG because it does business in this jurisdiction.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant does business in this jurisdiction and because the wrongful conduct giving rise to this case was directed from the Defendant into this District where the Plaintiff resides.

## INTRODUCTION

6. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. According to online robocall tracking service "YouMail," 3.8 billion robocalls were placed in February 2026 alone, at a rate of 136.8 million per day. www.robocallindex.com (last visited March 9, 2026).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

14. Defendant CVIG is a Medicare advantage brokerage that markets and solicits insurance plans to consumers throughout the United States.[3]

15. Defendant CVIG makes outbound calls to generate leads for its insurance sales employees.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/cvig/about/

16. This unlawful telemarketing activity includes placing unsolicited calls to phone numbers using an artificial agent that is sophisticated enough to respond to consumer prompts, in violation of the TCPA.

17. In response to these calls, Plaintiff Kilmer brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Class and costs.

**PLAINTIFF KILMER'S ALLEGATIONS**

18. Plaintiff Kilmer is the sole owner and user of his landline phone number ending in 4170.

19. Plaintiff Kilmer's landline phone number ending in 4170 is a residential telephone line.

20. Since late 2024, Plaintiff Kilmer has been receiving unsolicited calls to his landline phone number regarding Medicare.

21. Many of the calls that Plaintiff Kilmer received were placed using an artificial agent that asks pre-qualification questions, and that can provide limited responses to consumer prompts.

22. Plaintiff Kilmer told the artificial agent to stop calling multiple times, but the calls have continued.

23. On February 5, 2026 at 12:37 PM, Plaintiff Kilmer received an unsolicited call to his landline phone from 607-210-4076.

24. When Plaintiff Kilmer answered this call, an artificial agent asked Plaintiff a few questions, including how old he is.

25. Plaintiff Kilmer recognized this artificial agent from previous calls that he received.

26. Plaintiff Kilmer could tell that the call was from an artificial agent because it was the same voice, with the same exact script that he had heard in previous calls.

27. In addition, the voice sound and intonation were unnatural and sounded robotic, featuring abnormal pauses when Plaintiff Kilmer would speak.

28. Plaintiff Kilmer played along with the artificial agent to identify the caller and was ultimately transferred to an employee named Jennifer Bowman who said that she works for Core Value.

29. Bowman provided her callback number, which is 215-258-9349.

30. When 215-258-9349 is dialed, it leads to Bowman's voicemail that identifies the company name Core Value Insurance Group and Bowman's name.[4]

31. Plaintiff explained to Bowman that he had been receiving numerous unsolicited Medicare calls from automated callers, and that he engaged with the artificial agent and subsequent transfer solely to identify the entity responsible for the repeated unwanted calls to his residential phone line to stop them.

32. Bowman assured Plaintiff Kilmer that she would do whatever she could to help stop the calls.

33. Plaintiff Kilmer never provided prior express consent to Defendant CVIG or any entity acting on its behalf to place calls to his telephone number using an artificial or prerecorded voice.

34. The unauthorized solicitation telephone calls that Plaintiff Kilmer received from or on behalf of the Defendant have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

---

[4] Based on an investigation conducted by Plaintiff's employees.

35. The calls also wasted Plaintiff's time, as he spent time allowing himself to be transferred to determine which company is behind the calls.

36. Seeking redress for these injuries, Plaintiff Kilmer, on behalf of himself and a Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

37. Plaintiff Kilmer brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant called on their telephone number (2) using a pre-recorded or artificial voice.

38. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Kilmer anticipates the need to amend the Class definition following appropriate discovery.

39. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

40. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any

questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) whether Defendant made calls using an artificial agent to consumer telephone numbers without consent;

(c) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

41. **Adequate Representation**: Plaintiff Kilmer will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Kilmer has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Kilmer and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Kilmer nor his counsel have any interest adverse to the Class.

42. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff Kilmer. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from

Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Kilmer and the Pre-recorded No Consent Class)**

43. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

44. Defendant CVIG transmitted unwanted solicitation telephone calls to Plaintiff Kilmer and the other members of the Pre-recorded No Consent Class using an artificial agent.

45. These pre-recorded voice calls were made *en masse* without the prior express consent of the Plaintiff Kilmer and the other members of the Pre-recorded No Consent Class.

46. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(B). As a result of Defendant's conduct, Plaintiff Kilmer and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation, as well as injunctive relief.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing his attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring the Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Kilmer requests a jury trial.

Respectfully Submitted,

**CHAD KILMER**, individually and on behalf of all others similarly situated,

DATED this 7th day of April, 2026.

By: /s/ *Stefan Coleman*
Stefan Coleman
law@stefancoleman.com
COLEMAN PLLC
11 Broadway, Suite 615
New York, NY 10004
Telephone: (877) 333-9427

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881
**Pro Hac Vice motion forthcoming*

*Attorneys for Plaintiff and the putative Class*